UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> v. <br><br> RANI EL-SAADI, <br><br>　　　　　Defendant. | No. 19 Cr. 374 (RDM) <br><br> Hon. Randolph D. Moss |

**DEFENDANT RANI EL-SAADI'S REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS COUNT 18 AND TO SEVER**

Justin V. Shur
Emily K. Damrau
MOLOLAMKEN LLP
600 New Hampshire Avenue, N.W.
Washington, D.C.  20037
Telephone: (202) 556-2000
Facsimile:  (202) 556-2001

Megan Cunniff Church
MOLOLAMKEN LLP
300 N. LaSalle Street
Suite 5350
Chicago, Illinois  60654
Telephone: (312) 450-6700
Facsimile:  (312) 450-6701

*Attorneys for Rani El-Saadi*

**TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................. 1

ARGUMENT ..................................................................................................................... 2

I.      Count 18 Must Be Dismissed for Lack of Venue ............................................. 2

        A.      The Only Conduct Properly Charged Occurred Outside the District ..... 2

        B.      The Contribution Was Accepted Outside the District ........................... 4

II.     Severance of Mr. El-Saadi's Trial from His Co-Defendants' Is Warranted ....... 7

        A.      Joinder of Count One Prejudices Mr. El-Saadi ....................................... 7

        B.      Mr. El-Saadi Is Prejudiced by Joinder of Defendants in Count Thirteen ............. 10

CONCLUSION ................................................................................................................ 12

# **TABLE OF AUTHORITIES**

Page(s)

### CASES

*Kotteakos v. United States*,
   328 U.S. 750 (1946) ............................................................................................................. 10

*United States v. Anderson*,
   328 U.S. 699 (1946) ............................................................................................................... 2

*United States v. Berry*,
   21 F.3d 428 (6th Cir. 1994) ................................................................................................... 9

*United States v. Cabrales*,
   524 U.S. 1 (1998) ................................................................................................................... 2

*United States v. Chestnut*,
   533 F.2d 40 (2d Cir. 1976) ............................................................................................ 3, 4, 5

*United States v. Cotona*,
   No. 07-26, 2007 WL 3124700 (D.N.J. Oct. 22, 2007) ........................................................ 12

*United States v. Ebersole*,
   411 F.3d 517 (4th Cir. 2005) ................................................................................................. 6

*United States v. Hankin*,
   607 F.2d 611 (3d Cir. 1979) ......................................................................................... 3, 5, 6

*United States v. Hsia*,
   24 F. Supp. 2d 14 (D.D.C. 1998) ........................................................................................... 6

*United States v. Johnson*,
   510 F.3d 521 (4th Cir. 2007) ................................................................................................. 6

*United States v. Mardian*,
   546 F.2d 973 (D.C. Cir. 1976) ............................................................................................. 11

*United States v. Passodelis*,
   615 F.2d 975 (3d Cir. 1980) .................................................................................................. 3

*United States v. Sampol*,
   636 F.2d 621 (D.C. Cir. 1980) ............................................................................................. 11

*United States v. Trie*,
   21 F. Supp. 2d 7 (D.D.C. 1998) ............................................................................................. 9

**STATUTES**

15 U.S.C. § 78aa ........................................................................................................................... 6

18 U.S.C. § 2 ................................................................................................................................ 4

18 U.S.C. § 614 ............................................................................................................................ 3

52 U.S.C. § 30122 ................................................................................................................ *passim*

**OTHER AUTHORITIES**

Federal Election Commission, *Itemized Disbursements*,
  https://docquery.fec.gov/cgi-bin/forms/C00586537/1108472/sb/22
  (last visited Oct. 22, 2020) ........................................................................................................ 5

Ellen Nakashima, et al., *Russia Remains More Potent Threat of Election
  Interference Despite Administration Focus on Iran*,
  Wash. Post, Oct. 22, 2020, https://www.washingtonpost.com/national-
  security/iran-russia-election-interference/2020/10/22/e3c2fc1a-1496-11eb-
  ad6f-36c93e6e94fb_story.html ............................................................................................... 10

Pranshu Verma & Kenneth P. Vogel, *U.S. Imposes Sanctions
  on Ukrainian With Ties to Russia, Citing Election Interference*,
  N.Y. Times, Sept. 10, 2020, https://www.nytimes.com/-
  2020/09/10/us/politics/sanctions-russia-ukraine-election-interference.-
  html?searchResultPosition=1 .................................................................................................. 10

# **INTRODUCTION**

Count 18 of the Indictment is not properly venued in this District and must be dismissed. There is no allegation or evidence that Mr. El-Saadi permitted his name to be used to effect conduit contributions or took any action in the District of Columbia. Instead and in response, the government advances a theory unsupported by law or statute in search of a hook for venue. It asserts that Mr. El-Saadi not only "permitted his name to be used to effect contributions of another," but also caused Political Committees 2 and 5 to accept conduit contributions. And it asserts because Political Committee 5 was headquartered in this District, venue is proper.

The government's theory fails for two reasons. First, 52 U.S.C. § 30122 prohibits the "knowing[ ] accept[ance]" of an illegal contribution. That is not what the Indictment alleges, however. Count 18 alleges that Mr. El-Saadi caused Political Committees 2 and 5 to "***unwittingly*** accept" an illegal contribution, which is not prohibited by statute. Given this failing, the only alleged conduct relevant for purposes of venue is where Mr. El-Saadi permitted his name to be used to effect the contribution. The government has not argued—nor could it— that he did so in this District.

Second, even if—as the government alleges—venue was proper where the contribution was accepted, Count 18 is still improperly venued in Washington, D.C. Given the joint fundraising effort, it was Political Committee 2 which accepted the contribution, a portion of which was then distributed to Political Committee 5. The government does not claim that Political Committee 2 was located in or accepted Mr. El-Saadi's contribution in this District; it simply represents that Political Committee 5 was located in Washington, D.C. But Political Committee 5's location as a secondary recipient of a contribution accepted elsewhere is not sufficient to establish venue in this District. The government's arguments opposing severance

fare no better. It claims Count 1 is an overarching conspiracy with facts intrinsic to the conspiracy alleged in Count 13 and thus necessitate a joint trial. Not so. The conspiracy alleged in Count 1 is separate and distinct from the conspiracy alleged in Count 13, as illustrated by the allegations in Count 1 that Mr. El-Saadi's co-defendants funneled *foreign money* into a U.S. presidential campaign—allegations that are nowhere to be found in Count 13. The inflammatory nature of those allegations alone warrant severance.

Moreover, in addition to their alleged participation in a foreign influence scheme, Mr. El-Saadi's co-defendants are charged in separate counts with lying to FBI agents and tampering with a grand jury witness. Mr. El-Saadi, on the other hand, is not charged with or connected to any of those allegations. And the government's attempt to suggest otherwise falls flat. By lumping Mr. El-Saadi in with the other defendants at trial, a jury would be hard pressed to separate the evidence, charges, and inferences against Mr. El-Saadi's co-defendants from those against him. Severance is therefore warranted.

## ARGUMENT

**I.     Count 18 Must Be Dismissed for Lack of Venue**

Venue is proper where the *locus delicti* occurred. *United States v. Cabrales*, 524 U.S. 1, 6-7 (1998). To determine where the crime occurred, the court looks to "the nature of the crime alleged and the location of the act or acts constituting it." *Id.* (*quoting United States v. Anderson*, 328 U.S. 699, 703 (1946)).

**A.     The Only Conduct Properly Charged Occurred Outside the District**

In line with this authority and contrary to the government's claims, 52 U.S.C. § 30122 has three distinct conduct elements for purposes of venue: (1) making a contribution in the name of another, (2) willfully permitting one's name to be used to effect such a contribution, and (3) knowingly accepting a conduit contribution. As explained below, the only thing Mr. El-Saadi is

2

properly charged with is the second conduct element of § 30122, which focuses on the "making" of a conduit contribution—specifically where a person permitted "his name to be used to effect such a contribution." 52 U.S.C. § 30122. Accordingly, venue for Count 18 is found where the contribution was made.

In *United States v. Hankin*, 607 F.2d 611 (3d Cir. 1979), the Third Circuit explained that the purpose of the contribution statute was "to punish the *[m]aking* of illegal contributions." *Id.* at 615 (emphasis added).[1] And the "criminal act of making the illegal contribution is complete before the deposit of the checks." *Id.* In so holding, *Hankin* distinguished the crime of making a contribution with the crime of causing another to accept or receive an illegal contribution. The latter was the crime at issue in *United States v. Chestnut*, 533 F.2d 40, 47 (2d Cir. 1976) (defendant was charged with "willfully causing [another] to receive an unlawful corporate contribution"). In distinguishing *Chestnut*, the *Hankin* court stated it did "not follow that because the crime of receiving and accepting contributions includes the act of depositing checks, the act of making contributions necessarily includes the same element." 607 F.2d at 613. Thus, the court held, the making of a contribution was complete prior to deposit of the contribution. The court in *United States v. Passodelis*, 615 F.2d 975 (3d Cir. 1980), reiterated that same point one year later, holding that the "illegal making of a contribution is complete before the contribution is deposited by the recipient." *Id.* at 977. Venue, then, is appropriate where the contribution was allegedly made. And there is no dispute that the contribution, which is the subject of Count 18, was allegedly made outside of this District.

As a result, the government attempts to shoehorn Mr. El-Saadi's alleged actions into the third conduct element of § 30122. But Count 18 does not allege that Mr. El-Saadi caused another

---

[1] *Hankin* analyzed 18 U.S.C. § 614, the predecessor statute with nearly identical language to § 30122, the statute at issue in the present case.

to "***knowingly*** accept contributions made by one person in the name of another." It instead alleges Mr. El-Saadi caused Political Committees 2 and 5 to "***unwittingly*** accept contributions made by one person in the name of another." Indictment ¶ 68 (emphasis added); Dkt. 91 ("Opp.") at 2. That alleged conduct is not prohibited under § 30122. A person or entity "unwittingly accept[ing]" illegal contributions is of course not the same as one "knowingly accept[ing]" such contributions. The former faces no criminal liability; the latter is a co-conspirator or co-schemer. *See Chestnut*, 533 F.2d at 47 ("causation aspect of the charge [of accepting an illegal contribution]" derived from 18 U.S.C. § 2 "***makes punishable as a principal one who willfully causes another to commit an offense***") (emphasis added).

*Chestnut* illustrates this point. In that case, the advertising agency that accepted the illegal contribution performed work for the campaign for which it received the illegal contribution as payment for its outstanding invoices. 533 F.2d at 43-44. In other words, the advertising agency knew that it was accepting contributions made in the name of another when it deposited the checks into its bank account, and thus the defendant could be held liable for aiding and abetting the advertising agency's knowing receipt of the illegal contributions. *Id.* at 47. Here, in contrast, the government does not allege that Political Committees 2 and 5 knew of any illegal conduit contribution. Just the opposite. The government alleges that they were unknowing victims. Mr. El-Saadi cannot be held criminally liable for aiding and abetting innocent conduct. Nor can such conduct be the *locus delicti* for purposes of venue.

**B.     The Contribution Was Accepted Outside the District**

Even if venue for Count 18 was proper where the alleged conduit contribution was accepted—based on the government's allegation that Mr. El-Saadi caused the unwitting acceptance of it, venue would still be improper in this District. The government does not claim

4

that the physical delivery of the contribution occurred in this District or that Political Committee 2 was located in this District when it accepted the contribution. Although not stating so explicitly, the government has effectively conceded that the alleged contribution in Count 18 was accepted and deposited by Political Committee 2 before funds could be transferred to Political Committee 5. *See* Opp. at 3, n.1 (acknowledging that contributions must be "transferred" to the participating political committees after they are received by the joint fundraising committee); *see also* Federal Election Commission, *Itemized Disbursements*, https://docquery.fec.gov/cgi-bin/forms/C00586537/1108472/sb/22 (last visited Oct. 22, 2020) (showing Political Committee 2 "disburs[ed]" funds to various committees, meaning that the contribution was necessarily accepted before the funds could be "disburs[ed]" or "transfer[red]"). But it asserts venue is proper because Political Committee 5 was located in this District when it received a portion of the contribution that Mr. El-Saadi paid to Political Committee 2. *See* Op. at 2-3.

However, under *Hankin* and *Chestnut*, the crime of accepting the illegal contribution was complete, at latest, when Political Committee 2 deposited the check, not when funds were subsequently transferred. *Chestnut*, 533 F.2d at 47 (substantive offense of receiving and accepting illegal contribution complete where checks deposited); *Hankin*, 607 F.2d at 613 (recognizing that "crime of receiving and accepting contributions includes the act of depositing checks"). The government cites no authority for the proposition that the location of the recipient of a secondary transfer of a contribution is sufficient to establish venue in that secondary location. Nor can it. Under the "knowing acceptance" prong of § 30122, the offense is complete once the conduit contribution is accepted, not when a political committee decides to pass along funds to other participants without the defendant's involvement. *See Hankin*, 607 F.2d at 615 (rejecting the government's claim that the act of making an illegal contribution was complete

5

based on when the political committee decided to deposit the checks because "[s]uch a result would afford the defendant no protection against possible prosecution long after his criminal acts are completed").

In a futile attempt to bolster its argument, the government relies on wire-fraud and false-statement cases that are inapposite in the context of § 30122.  Opp. at 3-4.  The government cites *United States v. Hsia*, 24 F. Supp. 2d 14 (D.D.C. 1998), and *United States v. Ebersole*, 411 F.3d 517 (4th Cir. 2005), for the proposition that a "single coordinated illegal contribution scheme is properly prosecuted in the district where all of the contributions were ultimately received, accepted, and reported."  Opp. at 3.  But *Hsia* and *Ebersole* both involved continuing offenses.  In *Hsia*, the court rejected a motion to dismiss a conspiracy charge for lack of venue because a conspiracy is a "continuing offense" and venue for continuing offenses is proper in "any district in which some overt act in furtherance of the conspiracy was committed by any of the co-conspirators.  *Hsia*, 24 F. Supp. 2d at 22.  *Ebersole* likewise concerned a continuing offense: a wire-fraud scheme.  There, the court held that venue was proper "in any district where a payment-related wire communication was transmitted in furtherance of Ebersole's fraud scheme."  *Ebersole*, 411 F.3d at 527.  These cases stand in contrast to the charge Mr. El-Saadi faces.[2]  Count 18 does not charge a continuing offense or a scheme.  Rather, it charges Mr. El-Saadi with "permitt[ing] his name to be used to effect contributions of another."  Indictment ¶ 68.  That crime was completed when the contribution was made.  *Hankin*, 607 F.2d at 615 (holding "statute of limitations began to run when the contributions were made").

---

[2] The government also cites *United States v. Johnson*, 510 F.3d 521 (4th Cir. 2007).  That case, however, relied on the Securities Exchange Act's broad venue provision, 15 U.S.C. § 78aa, to find venue proper.  Section 30122 contains no such venue provision.

6

Finally, the government's worry over the inconvenience of needing to establish venue for each count in an indictment, as well as its reliance on language from a dissenting opinion from a denial of an *en banc* petition in *Passodelis*, *see* Opp. at 3, should not sway the Court to relieve the government of its burden. In this case alone, the government has charged two conspiracies, bringing together eight individuals into a single case charged in this District, despite the fact that nearly all of the conduct alleged occurred outside of this District. That the government might not be able to charge certain substantive counts in an indictment or that it must bring those charges elsewhere is not a sufficient reason to forego the Constitution's and the Federal Rules of Criminal Procedure's venue requirements. Mr. El-Saadi requests that the Court dismiss Count 18 as venue in this District is improper.

## II.     Severance of Mr. El-Saadi's Trial from His Co-Defendants' Is Warranted

The government agrees that severance is appropriate where "'the joinder of offenses or defendants . . . appears to prejudice the defendant . . . .'" Opp. at 4 (quoting Fed. R. Crim. P. 14(a)). Yet it ignores the substantial prejudice that will result if Mr. El-Saadi's trial is not severed, while also insisting that inflammatory allegations that his co-defendants knowingly funneled foreign money into a U.S. presidential campaign should be heard by Mr. El-Saadi's jury. The government has proved the point: Mr. El-Saadi's trial must be severed from his co-defendants' so that he may receive a fair trial.

### A.     Joinder of Count One Prejudices Mr. El-Saadi

While the government acknowledges that Mr. El-Saadi is not charged in the conspiracy alleged in Count 1, it argues that Count 1 is an "overarching conspiracy" that is intertwined with and somehow necessary to explain the conspiracy alleged in Count 13. But the conspiracy alleged in Count 1 is focused on the use of foreign funds to influence a U.S. presidential election,

7

allegations that are wholly separate and distinct from—and thus unnecessary to explain—the conspiracy alleged in Count 13.

While Count 1 does not allege foreign influence as an object or purpose of the conspiracy, it is clear from the indictment that it is. Nearly every overt act alleged in Count 1 involves Foreign Country A. *See* Indictment ¶29. For instance, there is a series of overt acts which allege Foreign Country A provided money to Nader and Khawaja to fund contributions to Candidate 1. In a notable exchange, Nader refers to Foreign Country A as the "bakery" responsible for "prepar[ing]" the "Baklava"—which, according to the government, is code Nader and Khawaja used to refer to funds provided by Foreign Country A for political contributions. *Id.* ¶29(ee). Other examples include:

- In discussing money he was planning to send to Khawaja for donations to Candidate 1, Nader told Khawaja: "I am following up with [Foreign Country A] on making sure the [funds] arrive later this week in time for the [fundraising event]! Nader later wrote to Khawaja: "Package was authorized and sent!" *Id.* ¶29(d);

- Nader wrote to Khawaja: "A package of Baklava was prepared today as promised and sent DHL. It should arrive in time for the event with your Sister." (according to the government, "Sister" was code for Candidate 1.) *Id.* ¶29(gg); and

- Khawaja wrote Nader: "That's why we need [more money], If [Candidate 2] gets elected its over for the Arabs." Nader responded, "Let us hope we put a good one in next couple of weeks and to follow up fast and immediate with a new tray of Cookies!" (referring to funds provided by Foreign Country A to be used for contributions). *Id.* ¶29(dd).

It is also clear from the overt acts alleged in Count One that, despite concern about detection,[3] Nader apparently sought guidance and approval from and routinely updated Foreign Country A. Some examples include:

---

[3] As explained in a message from Nader, an official from Foreign Country A's government was "cautious" and did not want Nader to attend a national political convention because he may be "too exposed." Indictment ¶29(aa).

8

- Nader reported to an official from Foreign Country A's government that he "[h]ad a magnificent session with Big Lady's key people . . . . You will be most amazed by my progress on that side!" (according to the government, "Big Lady" was code for Candidate 1). *Id.* ¶29(b);

- Nader reported to an official from Foreign Country A's government that he was "leaving very early morning to catch up with big Lady over the weekend . . . . Can I come over for 10 minutes … to get your blessings and instructions before I leave please?" *Id.* ¶29(g); and

- Nader sent a recording of Khawaja talking with Candidate 1's campaign to a Foreign Country A government official. *Id.* ¶29(oo).

Unlike Count 1, there is absolutely no reference in the overt acts alleged in Count 13 to Foreign Country A.

The foreign influence allegations in Count 1 are explosive and unfairly prejudicial to a defendant, like Mr. El-Saadi, who is not alleged to have known about or had any involvement with Foreign Country A. Lumping Mr. El-Saadi with those alleged to have, in effect, conspired with a foreign government to influence a U.S. presidential election is highly prejudicial as it could have a material effect on a jury who may harbor prejudice against certain foreign countries, particularly those alleged to have attempted to influence a U.S. election. *See United States v. Trie*, 21 F. Supp. 2d 7, 20 (D.D.C. 1998) (noting the "prejudicial nature" of statement in indictment alleging defendant "channeled foreign money to the DNC"); *cf. United States v. Berry*, 21 F.3d 428 (6th Cir. 1994) ("Appeals to patriotism, especially in the face of a commonly perceived national enemy, can, under certain circumstances, so inflame the passions and prejudices of a jury that a defendant could be denied a fair trial.").

Indeed, it would be hard to find a juror who is not aware of allegations of foreign interference in recent U.S. elections. Russia's interference in the last presidential election has been the focus of highly-publicized investigations by, among others, a DOJ Special Counsel and investigators for various Congressional committees. And there has been wide coverage of recent

attempts to interfere with the 2020 U.S. presidential election. *See, e.g.*, Pranshu Verma & Kenneth P. Vogel, *U.S. Imposes Sanctions on Ukrainian With Ties to Russia, Citing Election Interference*, N.Y. Times, Sept. 10, 2020, https://www.nytimes.com/2020/09/10/us/politics/-sanctions-russia-ukraine-election-interference. html?searchResultPosition=1 (imposing sanctions on foreign actor in connection with "covert influence campaign"); Ellen Nakashima, et al., *Russia Remains More Potent Threat of Election Interference Despite Administration Focus on Iran*, Wash. Post, Oct. 22, 2020, https://www. washingtonpost.com/national-security/iran-russia-election-interference/2020/10/22/e3c2fc1a-1496-11eb-ad6f-36c93e6e94fb_story.html.

In this instance, the potential for prejudice is all the greater because the involvement of Foreign Country A is dubiously relevant at best to Count 13 and not at all relevant to Mr. El-Saadi. Without any allegation that Mr. El-Saadi was knowingly involved in or aware of Foreign Country A's apparent attempt to influence a U.S. presidential election, there is significant risk that the jury will engage in unfettered speculation and resort—consciously or not—to associating Mr. El-Saadi with his codefendants' actions alleged in Count 1. *See Kotteakos v. United States*, 328 U.S. 750, 774 (1946) (noting the "dangers for transference of guilt from one to another" in conspiracy cases "are so great that no one really can say prejudice to substantial right has not taken place"). That is impermissible.[4]

### B. Mr. El-Saadi Is Prejudiced by Joinder of Defendants in Count Thirteen

The government argues that "severance is not appropriate merely because some less-active co-conspirators are charged alongside their more integral counterparts." Opp. at 7. That

---

[4] The government's own briefing highlights the potential for confusion. It argues that the contributions related to the October 2016 Las Vegas event "were funded by Nader, through Khawaja." Opp. at 8. Count 13 in the Indictment, however, states that the contributions "were funded by Khawaja." Indictment ¶55. Elsewhere, there is the suggestion that Foreign Country A supplied the funds. *Id.* ¶29(ee). If even the government cannot keep who was allegedly funding the contributions straight, a jury will certainly be unable to do so.

argument misses the point.  Severance is appropriate not only because Mr. El-Saadi had minimal participation in the conspiracy alleged in Count 13, *United States v. Mardian*, 546 F.2d 973, 977 (D.C. Cir. 1976) (severance appropriate where all defendants were charged with conspiracy but movant was alleged to have only participated in 5 of the 45 alleged overt acts and his participation was minimal), but also because of the severity of the ***additional*** charges faced by his alleged co-conspirators, *United States v. Sampol*, 636 F.2d 621, 651 (D.C. Cir. 1980) (finding improper prejudice resulting from a joint trial against defendants charged with "grossly disparate" crimes).

      The other charges against Mr. El-Saadi's co-conspirators are significant.  In addition to the foreign influence scheme alleged in Count 1, Roy Boulos is separately charged with obstruction for lying to FBI agents, allegedly telling them that Khawaja never asked him to make the contribution.  Indictment ¶130.  Mohammad "Moe" Diab is also separately charged with obstruction for lying to FBI agents about the source of the contributions.  *Id.* ¶132.  As is Stevan Hill, *id.* ¶134, and Thayne Whipple, *id.* ¶136.  And Khawaja is separately charged with obstruction for "provid[ing] Individual 2 with a false factual narrative" to be used when testifying before the grand jury *i.e.*, witness tampering.  *Id.* ¶138.  Mr. El-Saadi, meanwhile, is not charged with any similar offenses.

      However, in an attempt to tie Mr. El-Saadi to his co-defendants' alleged obstructive conduct, the government points to an invoice from Mr. El-Saadi's company showing that Khawaja purchased travel-related services.  Opp. at 8-9.  According to the government, that invoice was fake and created to conceal the alleged conduit contribution.  But nowhere in its 64-page Indictment does the government mention the invoice, let alone suggest that it constitutes

11

obstruction. And for good reason. At trial, Mr. El-Saadi will prove that the invoice was part of a legitimate commercial transaction.

Moreover, the government's argument does not change the simple fact that, unlike his co-defendants, Mr. El-Saadi is not charged with obstruction. He should therefore not be placed at risk of guilt by association simply because he is on trial at the same time as his co-defendants—who are, in fact, charged with obstruction in separate counts. *United States v. Cotona*, No. 07-26, 2007 WL 3124700, at *2 (D.N.J. Oct. 22, 2007) (severing witness tampering charge from other defendants charged for various bank and mail fraud crimes). Indeed, the government's tenuous attempt to lump Mr. El-Saadi in with his co-defendants' alleged obstruction underscores this risk.

The disparity in evidence and charges as between Mr. El-Saadi and his co-defendants persists, necessitating a separate trial.

## **CONCLUSION**

For the reasons stated above and in his opening brief, Mr. El-Saadi respectfully requests that the Court dismiss Count 18 and permit him to be tried separately from his co-defendants on the remaining charge.

Dated: October 23, 2020
Washington, D.C.

Respectfully submitted,

/s/ Justin V. Shur
Justin V. Shur
Emily K. Damrau
MOLOLAMKEN LLP
600 New Hampshire Avenue, N.W.
Washington, D.C.  20037
Telephone: (202) 556-2000
Facsimile:  (202) 556-2001

Megan Cunniff Church
MOLOLAMKEN LLP
300 N. LaSalle Street
Suite 5350
Chicago, Illinois  60654
Telephone: (312) 450-6700
Facsimile:  (312) 450-6701

*Attorneys for Rani El-Saadi*

Case 1:19-cr-00374-RDM   Document 93   Filed 10/23/20   Page 18 of 18

**CERTIFICATE OF SERVICE**

I certify that on October 23, 2020, I caused the foregoing Reply in Support of Motion To Dismiss Count 18 and To Sever to be filed with the Clerk of Court using the CM/ECF system, which will effect service on all parties.

/s/ Megan Cunniff Church
Megan Cunniff Church