**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA

v.

RANI EL-SAADI,

                    Defendant.

No. 19 Cr. 374 (RDM)

Hon. Randolph D. Moss

**DEFENDANT RANI EL-SAADI'S SUPPLEMENTAL MEMORANDUM**
**OF LAW IN SUPPORT OF MOTION TO DISMISS COUNT 18**

Justin V. Shur
Emily K. Damrau
MOLOLAMKEN LLP
600 New Hampshire Avenue, N.W.
Washington, D.C.  20037
Telephone:  (202) 556-2000
Facsimile:   (202) 556-2001

Megan Cunniff Church
MOLOLAMKEN LLP
300 N. LaSalle Street
Suite 5350
Chicago, Illinois  60654
Telephone: (312) 450-6700
Facsimile:  (312) 450-6701

*Attorneys for Rani El-Saadi*

## INTRODUCTION

Count 18 of the indictment alleges Mr. El-Saadi made an unlawful conduit contribution. There is no dispute that Mr. El-Saadi never entered this District or performed any act within this District in connection with that contribution. That should end the inquiry: Venue is not proper in this District as to Count 18. During the June 15 status conference, while discussing Mr. El-Saadi's motion to dismiss for lack of venue, the Court inquired about where the contribution was received and whether Federal Election Commission ("FEC") regulations shed any light on that question.

Even if where the contribution was received (as opposed to where it was made) were the operative standard, venue is still not proper in this District as to Count 18—a conclusion that is supported by the relevant FEC regulations. The indictment alleges that Mr. El-Saadi made the contribution via check to Political Committee 2 in connection with a fundraiser in Las Vegas, Nevada. Indictment ¶¶ 58(a), (g). The indictment does not allege, and the government does not claim, that Political Committee 2 received the check in this District. Instead, the government proffers that Political Committee 5 was located in this District when it received a portion of the contribution. As explained below, that a portion of the contribution that was received outside this District eventually made its way to Political Committee 5 is simply not enough to establish venue.

## ARGUMENT

### I.     Count 18 Must Be Dismissed for Lack of Venue

Venue is proper where the *locus delicti* occurred. *United States v. Cabrales*, 524 U.S. 1, 6-7 (1998). "[T]he locus delicti must be determined from the nature of the crime alleged and the location of the act or acts constituting it." *United States v. Anderson*, 328 U.S. 699, 703 (1946). "[D]efining the proper venue of a crime requires identifying where the physical *conduct* constituting the offense took place." *United States v. Ramirez*, 420 F.3d 134, 144 (2d Cir. 2005)

(citing *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999) (internal quotations omitted)).

The government bears the burden of proving at trial by a preponderance of the evidence that venue is proper with respect to *each count* charged.  *United States v. Kwong-Wah,* 924 F.2d 298, 301 (D.C. Cir. 1991).  Here, the indictment's allegations and the government's evidentiary proffer establish that venue for Count 18 is not proper in the District of Columbia.[1]

### A.    The Only Conduct Charged Occurred Outside the District

#### 1.    The alleged contribution was made outside this District

Venue for Count 18 is proper where the alleged conduit contribution was ***made***.  *See United States v. Hankin*, 607 F.2d 611, 615 (3d Cir. 1979) (the "criminal act of making the illegal contribution is complete before the deposit of the checks"); *United States v. Passodelis*, 615 F.2d 975, 977 (3d Cir. 1980) (same); *see also Federal Prosecution of Election Offenses* 142 (8th ed. 2017) (citing *Passodelis*, 615 F.2d 975 and *Hankin*, 607 F.2d 611), available at: https://www. justice.gov/criminal/file/1029066/download; Dkt. 83-1 at 7-8.  Because Mr. El-Saadi made the purported contribution outside this District, venue is improper here.

#### 2.    The transfer of a contribution after receipt does not establish venue

Even if, as the Court suggested, venue is also found where a conduit contribution is received, the subsequent transfer of that contribution into this District does not establish venue. The government's theory is that venue is proper because Political Committee 5, which was in this District, received a portion of the alleged contribution from Political Committee 2 as part of a joint fundraising committee.  *See* Dkt. 92 at 2-3.  The cases on which the government relies for this

---

[1] Mr. El-Saadi hereby incorporates all arguments raised in his Motion To Dismiss Count 18, Dkt. 83, and subsequent Reply, Dkt. 93.  Mr. El-Saadi's arguments herein are narrowed to the issues this Court raised in the status conference held on June 15, 2021.  *See* Minute Entry (June 15, 2021).

proposition are inapposite.  *See* Dkt. 93 at 3-4.  Nor does analogy to fraud statutes with specific venue provisions or cases involving continuing offenses aid the government.  *See, e.g.*, 18 U.S.C. § 3237(a) ("Any offense involving the use of the mails, transportation in interstate or foreign commerce, or the importation of an object or person into the United States is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves.").

Had Congress intended venue for alleged violations of 52 U.S.C. § 30122 to include districts where portions of contributions, after receipt in another district, were later received, transferred, or used, it could have so specified.  For money laundering offenses, for example, Congress expressly stated that venue is proper in "any district in which the financial or monetary transaction is conducted" or in "any district where a prosecution for the underlying specified unlawful activity could be brought, if the defendant participated in the transfer of the proceeds of the specified unlawful activity from that district to the district where the financial or monetary transaction is conducted."  18 U.S.C. § 1956(i)(1), (2).  For such offenses, Congress also specified that for purposes of venue, "a transfer of funds from one place to another, by wire or any other means, shall constitute a single, continuing transaction" and "[a]ny person who conducts … any portion of the transaction may be charged in any district in which the transaction takes place."  18 U.S.C. § 1956(i)(3).  Congress could have similarly specified that the transfer of a conduit contribution from one committee to another or one candidate to another constitutes a single, continuing transaction for purposes of § 30122.  It did not do so.

**B.      FEC Regulations Confirm the Contribution Was Received Outside the District**

During the status hearing, the Court suggested that an inquiry into FEC regulations of joint fundraising committees may be necessary to determine where receipt of the alleged contribution occurred.  June 15, 2021 Status Conf. Tr. 10.  Mr. El-Saadi respectfully suggests that such inquiries go well beyond what is necessary to identify the *locus delicti* of a § 30122 violation.  *See Rodriguez-Moreno*, 526 U.S. at 279 (explaining that "the *locus delicti* of the charged offense must be determined from the nature of the crime alleged and the location of the act or acts constituting it" (internal quotations and citations omitted)).  Such broad inquiries also undermine the Constitution's safeguards of a defendant's venue right as set forth in Article III, § 2, cl. 3 ("Trial of all Crimes … shall be held in the State where the said Crimes shall have been committed"), and the Sixth Amendment (calling for trial "by an impartial jury of the State and district wherein the crime shall have been committed"), and the requirement set forth in Rule 18 of the Federal Rules of Criminal Procedure that "prosecution shall be had in a district in which the offense was committed," *Cabrales*, 524 U.S. at 6.  These constitutional and procedural requirements compel that venue provisions be narrowly construed.  *See, e.g.*, *United States v. Jefferson*, 674 F.3d 332, 365 (4th Cir. 2012) ("It is settled that, in a criminal case, venue must be narrowly construed." (citations omitted)).  Nevertheless, a review of the relevant FEC regulations confirm that the contribution at issue was received outside this District and thus venue here is inappropriate for Count 18.

There is no dispute that, as alleged, Political Committee 2 was a "joint fundraising committee."  Indictment ¶ 10.  The FEC regulations set forth guidelines for joint fundraising by political committees.  *See* 11 C.F.R. § 9034.8.  The participants in a joint fundraising effort must either establish a separate political committee *or* select a participating committee to serve as their

joint fundraising representative.  *Id.* § 9034.8(b)(1).  The indictment does not specify whether Political Committee 2 is a separate political committee or a participating committee.  But, as explained below, the distinction does not matter here.

Under FEC regulations, if the participants in a joint fundraising effort establish a separate political committee to act as a fundraising representative, that committee must (1) "[c]ollect contributions," (2) "[p]ay fundraising cost from gross proceeds and funds advanced by participants," and (3) "[d]isburse net proceeds to each participant."  11 C.F.R. § 9034.8(b)(2).  If a participant in the joint fundraising effort is selected to act as a fundraising representative, it too must (1) "[c]ollect contributions," (2) "[p]ay fundraising cost from gross proceeds and funds advanced by participants," and (3) "[d]isburse net proceeds to each participant."  *Id.* § 9034.8(b)(3).  Thus, regardless of whether the joint fundraising representative is a separate political committee or a participating committee, it has the same responsibilities.  As discussed below, those responsibilities demonstrate that Political Committee 2's receipt of the alleged contribution (outside this District) is not tantamount to Political Committee 5's subsequent receipt (in Washington, D.C.) of a portion of that contribution.

### 1.  FEC regulations delineate Political Committee 2's receipt of the contribution from any later disbursement to Political Committee 5

FEC regulations require the joint fundraising representative to maintain an entirely separate deposit account and specify it may "delay distribution of the fundraising proceeds" deposited in that account until all contributions are received, and all expenses are paid.  11 C.F.R. § 9034.8(c)(4).  Thus, the fundraising representative does not simply act as a passthrough to the joint committee participants—instead, it collects contributions, pays fundraising costs, ***and*** disburses net proceeds to each participant.  *Id.* at § 9034.8(b)(2).

If the **receipt** of contributions and **disbursement** of contributions were one in the same, as the government suggests, the regulations would have been written as such. *Cf. United States v. Menasche*, 348 U.S. 528, 538-39 (1955) ("It is our duty 'to give effect, if possible, to every clause and word of a statute.'"). Instead, FEC regulations delineate the receipt of contributions and disbursement of contributions as separate actions. The allegations in the indictment illustrate this point. It is apparent from the indictment that the receipt of the contribution by Political Committee 2 was distinct from any disbursement to Political Committee 5. The indictment alleges that Mr. El-Saadi made his contribution to Political Committee 2 on or about September 9, 2016. Indictment ¶ 58(g). But the disbursement to Political Committee 5 may have occurred as late as November 2016, **more than two months** later.[2] *Id.* ¶ 68.

2. **Reporting requirements distinguish between Political Committee 2's receipt of the contribution and any later disbursement to Political Committee 5**

The distinction between Political Committee 2's receipt of the contribution and any subsequent disbursement to Political Committee 5 is further highlighted by FEC reporting requirements. The fundraising representative (*i.e.*, Political Committee 2) has its own reporting requirements, separate and distinct from the participating political committees. *See* 11 C.F.R. § 9034.8(c)(9). The fundraising representative must report the contributions it receives in the reporting period in which they are received. On the other hand, the reporting obligations of the

---

[2] At the status conference, the Court inquired whether it was possible in a joint fundraising effort for there to be a separate conduit contribution made to Political Committee 5. June 15, 2021 Status Conf. Tr. 15:14-18. That is entirely plausible. While the joint fundraising representative is tasked with receiving, holding, and eventually distributing funds to participating committees, the FEC regulations specify that "other participants may also collect contributions and then forward them to the fundraising representative." 11 C.F.R. § 9034.8(b)(3). Political Committee 5 could have accepted a contribution in the first instance and then forwarded it to the fundraising representative for eventual disbursement. That is not, however, what is alleged in the indictment.

participating committees—such as Political Committee 5—are not triggered unless and until "funds are received *from* the fundraising representative." *Id.* § 9034.8(c)(4) (emphasis added). That is, "*[a]fter* distribution of net proceeds." *Id.* § 9034.8(c)(9) (emphasis added).  In other words, a participant in the joint fundraising effort must report net proceeds when they are ***actually received*** from the fundraising representative, not when they are deposited into the representative's separate account.

FEC regulations thus make clear that Political Committee 2's receipt of the contribution is not the functional equivalent of Political Committee 5's alleged receipt of it.  While Political Committee 5 may have later received a portion of the alleged contribution, that disbursement is too far removed from Mr. El-Saadi and Political Committee 2's receipt of the contribution to establish venue in this District.[3]  *See, e.g.*, *United States v. Bezmalinovic*, 962 F. Supp. 435, 437 (S.D.N.Y. 1997) (finding that substantial contacts did not exist to support bank fraud venue where defendant did not commit any acts in furtherance of the alleged scheme in the district, only ministerial actions by banks in crediting and debiting accounts took place in the district, and defendant did not foresee or intend those acts to take place in the district).

\*          \*          \*

Finally, the government's theory—that a donation to Political Committee 2 is one in the same as a donation to any participating political committee—has far-reaching implications. Publicly available reporting shows that 40 different political committees participated in the joint

---

[3] The government has also argued that the contribution was received "where the entity that has custody and control over the contribution was located."  June 15, 2021 Status Conf. Tr. 21:22-24. The government has cited no authority for this proposition, and there are no such requirements in the plain text of § 30122.  But even by the government's own rationale, Political Committee 2 had custody and control over the contribution:  It collected the contribution, paid fundraising costs from the gross proceeds, and eventually disbursed the net proceeds to each participant.

fundraising effort at issue in this case.  *See* Federal Election Commission, FEC Form 1, https://docquery.fec.gov/cgi-bin/forms/C00586537/1080677/ (last visited June 25, 2021).  That includes over 30 state democratic organizations located across the country.  Under the government's theory, a single donation to Political Committee 2 could result in a defendant being haled into court in over 30 districts because his donation would eventually be disbursed and received, in part, by one of the myriad political committees participating in the joint fundraising effort.  That cannot be correct.  Section 30122 has no specific venue provision and certainly does not contemplate the national reach the government's theory would require.

## <u>CONCLUSION</u>

For the reasons stated above and in his other briefing on his motion to dismiss, Mr. El-Saadi respectfully requests that the Court dismiss Count 18 for improper venue.


Dated:   June 25, 2021
         Washington, D.C.

Respectfully submitted,

/s/ Justin V. Shur
Justin V. Shur
Emily K. Damrau
MOLOLAMKEN LLP
600 New Hampshire Avenue, N.W.
Washington, D.C.  20037
Telephone:  (202) 556-2000
Facsimile:   (202) 556-2001

Megan Cunniff Church
MOLOLAMKEN LLP
300 N. LaSalle Street
Suite 5350
Chicago, Illinois  60654
Telephone: (312) 450-6700
Facsimile:  (312) 450-6701

*Attorneys for Rani El-Saadi*

## CERTIFICATE OF SERVICE

I certify that on June 25, 2021, I caused the foregoing Supplemental Memorandum of Law in Support of Motion To Dismiss Count 18 to be filed with the Clerk of Court using the CM/ECF system, which will effect service on all parties.

/s/ Justin V. Shur
Justin V. Shur
MOLOLAMKEN LLP
600 New Hampshire Avenue, N.W.
Washington, D.C.  20037
Telephone: (202) 556-2000
Facsimile: (202) 556-2001

*Attorney for Rani El-Saadi*