UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | |
| ) | CRIMINAL NO. 1:19-cr-00374 (RDM) |
| RANI EL-SAADI, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT EL-SAADI'S SUPPLEMENTAL
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COUNT 18**

Defendant El-Saadi willfully permitted the use of his identity to effect a political contribution of approximately $150,000 funded by Defendant Khawaja, thereby enabling Defendant Khawaja to unlawfully exceed FECA's contribution limits. More than $33,000 of this unlawful contribution was received, accepted, and reported by Political Committee 5 in the District of Columbia. That is the gravamen of Count 18 of the Indictment, and venue has been properly alleged in the District of Columbia. Contrary to Defendant El-Saadi's claim, his crime was not completed when he handed over the unlawful contribution to a representative of Political Committee 2, a joint fundraising committee that was raising funds on behalf of Political Committee 5 and others, but also encompasses when Political Committee 5 was deceived into receiving, accepting, and reporting a portion of the unlawful contribution in the District of Columbia. Put differently, because part of the unlawful contribution was *effected* in the District of Columbia, venue is proper in this District.

As detailed below, 18 U.S.C. § 30122 proscribes in the disjunctive both the *making* of conduit contributions, which applies to principals such as Defendant Khawaja in the instant case, as well as the *effecting* of such contributions, which applies to conduits such as Defendant El-Saadi. Defendant El-Saadi glosses over the fact that he has been charged with *effecting* a conduit

1

contribution—not *making* one. He urges this Court to dismiss Count 18 based on unduly narrow interpretations of case law addressing only the *making* of conduit contributions and an incorrect reading of FECA's regulations governing joint fundraising efforts, all the while ignoring the text of § 30122, which plainly criminalizes the *effecting* of conduit contributions. Defendant El-Saadi's arguments have no merit in law or fact, and his motion to dismiss Count 18 should be denied.[1]

## BACKGROUND

*Count 18*

Defendant El-Saadi was charged in an Indictment dated November 7, 2019, with violations of 18 U.S.C. § 371 and 52 U.S.C. §§ 30122 and 30109. (ECF No. 1 at ¶¶ 52, 53, 67, 68.) The fifty-three count Indictment containing the charges against Defendant El-Saadi arose out of a multi-year investigation by the Federal Bureau of Investigation into a scheme to make, effect, and cause conduit and excessive contributions to be unwittingly received by various political committees during and after the 2016 presidential election.

Defendant El-Saadi is charged in Count 18 with, "in the District of Columbia and elsewhere," willfully permitting his name to be used to effect a $150,000 contribution funded by Defendant Khawaja to Political Committee 2 and Political Committee 5, and willfully causing Political Committee 2 and Political Committee 5 to unwittingly accept the unlawful contribution. (ECF No. 1 at ¶¶ 58(g), 67-68.) Political Committee 2 was a joint fundraising committee, and Political Committee 5 was the governing body for a national political party. (ECF No. 1 at ¶¶ 10,

---

[1] The government hereby incorporates by reference the arguments raised in its Opposition to Defendant El-Saadi's Motion To Dismiss Count Eighteen and To Sever, ECF No. 92, and its Opposition to Defendant Stevan Hill's Motion To Dismiss Counts 17, 27, and 41 for Lack of Venue and To Adopt Co-Defendant Rani El-Saadi's Motion To Dismiss Count 18 of the Indictment for Lack of Venue, ECF No. 111. In this brief, the government focuses on the issues raised at the June 15, 2021 status conference in this case and the arguments made by Defendant El-Saadi in his supplemental filing in support of his Motion to Dismiss dated June 25, 2021.

16.) Defendant El-Saadi wrote a $150,000 check to Political Committee 2 on or about September 9, 2016, almost entirely with funds that he had obtained from Defendant Khawaja on or about that same day.  (ECF No. 1 at ¶¶ 58(g), 67-68.)  This unlawful contribution caused Political Committee 2 unwittingly to file a false report with the Federal Election Commission ("FEC") stating that the contribution was from Defendant El-Saadi, when in fact it was from Defendant Khawaja.  *Id*.

In addition to proving the allegations as set forth above at trial, the government anticipates that the evidence at trial will establish that:  (1) Political Committee 2 was a joint fundraising committee whose constituent members included Political Committee 5; (2) the $150,000 contribution made in El-Saadi's name and funded by Defendant Khawaja to Political Committee 2 resulted in Political Committee 5 receiving more than $33,000 of the unlawful contribution; (3) Political Committee 5 was physically located in the District of Columbia at all times relevant to the allegations as set forth in the Indictment; and (4) Political Committee 5 reported more than $33,000 of Defendant Khawaja's illegal contribution, which was knowingly made by Defendant El-Saadi using Defendant Khawaja's funds, in the District of Columbia.

*Federal Election Campaign Act Regulations*

The Federal Election Campaign Act of 1971 ("FECA"), 52 U.S.C. §§ 30101 *et seq*., and its implementing regulations allow candidates and committees to engage in joint fundraising activities by establishing a separate political committee, known as a joint fundraising committee ("JFC"), to act as their joint fundraising representative.  *See* 52 U.S.C. § 30102(e)(3)(A)(ii); 11 C.F.R. § 102.17(a)(l)(i).[2]  JFCs serve a limited purpose under the Act, which specifies that such

---

[2]     Defendant El-Saadi cites to 11 C.F.R. § 9034.8 in the Federal Election Commission's regulations as governing joint fundraising committees.  *See* ECF No. 123, *passim*.  Section 9034.8 applies to joint fundraising committees regarding the use of and entitlement to funds under the Presidential Election Campaign Fund, which relates to public financing, and is therefore

committees are "established solely for the purpose of joint fundraising." 52 U.S.C. § 30102(e)(3)(A)(ii). Committees participating in joint fundraising activity are required to agree on a formula for allocating fundraising proceeds and to enter into a written agreement stating the allocation formula. 11 C.F.R. § 102.17(c)(1). They are also required to establish a separate depository account for the JFC's receipt of joint fundraising proceeds. *Id.* § 102.17(c)(3). All fundraising solicitations made in connection with the joint fundraising activity must include a notice that clearly identifies the names of all participating committees as well as the allocation formula. *Id*. § 102.17(c)(2). In addition, the JFC is prohibited from conducting any fundraising activities other than for the participating committees in the joint fundraising effort. *Id*. §102.17 (a)(1)(i). Conceptually, a JFC serves as an administrative "clearinghouse" for committees that engage in a joint fundraising effort. *See* Advisory Opinion 2007-24, Federal Election Commission (December 10, 2007), at 2, available at https://www.fec.gov/files/legal/aos/2007-24/2007-24.pdf (last visited, June 30, 2021).

## DISCUSSION

Venue for Count 18[3] must be determined from the nature of the crime alleged and the location of the acts constituting it. *See United States v. Morgan*, 393 F.3d 192, 196 (D.C. Cir. 2004) ("When the statute proscribing the offense does not contain an express venue provision, the *locus delicti* must be determined from the nature of the crime alleged and the location of the act or

---

inapplicable. Although both sections are substantively similar, it is 11 C.F.R. § 102.17, not 11 C.F.R. § 9034.8, that governs joint fundraising committees in the context of the instant motion.

[3]   All of the government's arguments set forth in this Response are equally applicable to Count 19, which charges Defendant Hill with permitting his name to effect unlawful contributions funded by Defendant Khawaja to Political Committee 2 and Political Committee 5, and with willfully causing the same committees unwittingly to accept the unlawful contributions. Thus, the arguments contained herein provide bases to deny Defendant Hill's pending motion as well.

acts constituting it.") (internal quotes omitted).  In part, Defendant El-Saadi has been charged with *effecting* a conduit contribution—rather than *making* one—under § 30122.[4]  *See United States v. O'Donnell*, 608 F.3d 546, 550 (9th Cir. 2010) ("The intermediary . . . having acted at the direction and used the funds of the original source, has not made a contribution, but instead has 'knowingly permit[ted] his name to be used to effect such a contribution.'").  The plain text of § 30122 and FECA's regulations indicate that the full nature of the crime charged in Count 18—*i.e.*, *effecting* a conduit contribution—clearly encompasses Political Committee 5's receipt, acceptance, and reporting of the unlawful contribution.  Because these acts occurred in the District of Columbia by virtue of Political Committee's physical presence here, venue for Count 18 is proper in this District.

I.  **Venue Is Proper in the District of Columbia Because Defendant El-Saadi Effected an Illegal Contribution in this District**

    A.  **The Indictment Charges Defendant El-Saadi with Permitting His Name to Be Used to Effect an Illegal Contribution in the District of Columbia**

Defendant El-Saadi is charged with "willfully permit[ting] his name to be used to *effect* contributions of another to Political Committee 2 and Political Committee 5, and willfully caus[ing] the same entities to unwittingly *accept* contributions made by one person in the name of another person," ECF No. 1 at ¶ 68 (emphasis added), in violation of 52 U.S.C. § 30122.  This provision states: "No person shall make a contribution in the name of another person *or knowingly permit his name to be used to effect such a contribution*, and no person shall knowingly accept a

---

[4]  Defendant El-Saadi is also charged with willfully causing Political Committee 2 and Political Committee 5 unwittingly to accept the unlawful $150,000 conduit contribution.  For reasons fully laid out in the Government's prior filings at ECF Nos. 92 and 111, venue is also proper in the District of Columbia because it is where Defendant El-Saadi willfully caused Political Committee 5 unwittingly to accept the $150,000 contribution by virtue of Political Committee 5's physical presence in the District.

contribution made by one person in the name of another person." (emphasis added). Here, the relevant inquiry for whether venue lies in the District of Columbia for Count 18 is not where the unlawful contribution was *made*, but where the unlawful contribution was *effected*. The Indictment alleges that Khawaja's unlawful contribution was effected "in the District of Columbia and elsewhere." The allegation is sufficient to support venue in this District; all that remains is for the government to prove as much at trial by a preponderance of the evidence standard. *See United States v. Lam Kwong-Wah*, 924 F.2d 298, 301 (D.C. Cir. 1991).

Despite the fact that Defendant El-Saadi accurately recounts the language of the Indictment in his opening brief, acknowledging that he was charged with the *effecting* of an unlawful contribution, *see* ECF 83-1, at 7, Defendant El-Saadi nonetheless incorrectly argues that venue for Count 18 is only proper "where the alleged conduit contribution was **made**," ECF No. 123 at 2 (emphasis in original), and cites *United States v. Hankin*, 607 F.2d 611, 615 (3d Cir. 1979), and *United States v. Passodelis*, 615 F.2d 975 (3d Cir. 1980), as relevant authority.[5] *Hankin* and *Passodelis*, however, involved the prosecution of principals in conduit contributions schemes, not the conduits themselves, and therefore both defendants were charged with *making* contributions, not *effecting* them. As a result, neither case grappled with the statutory distinction between

---

[5] Defendant El-Saadi also argues that, because there is no allegation that he entered the District of Columbia or performed any act within the District in connection with the unlawful contribution, "[t]hat should end the inquiry" in his favor. ECF No. 123, at 1. This assertion is a mischaracterization of the relevant inquiry when considering whether a given venue is proper. It is well-settled law that the "constitutional standards for venue concern the locality of the substantive offense rather than the location of the offender at the time of the offense." *United States v. Chestnut*, 533 F.2d 40, 47 (2d Cir. 1976) (citing *Armour Packing Co. v. United States*, 209 U.S. 56, 76 (1908) and *Travis v. United States*, 364 U.S. 631, 634 (1961)).

"*made*", which applies to principals, and "*effect*", which applies to conduits such as Defendant El-Saadi.[6]

The distinction between *making* a contribution in the name of another and permitting another to use one's name to *effect* a contribution, as clearly delineated in § 30122, must be given full meaning and effect. *See United States v. Menasche*, 348 U.S. 528, 538-39 (1955) ("It is our duty 'to give effect, if possible, to every clause and word of a statute.'") (citing *Montclair* v. *Ramsdell*, 107 U.S. 147, 152 (1882)). While the former is intended to punish those who disguise their identities as the true source of campaign contributions, the latter is intended to punish conduits—such as Defendant El-Saadi in the instant matter—who lend their identities to the true source of campaign contributions to facilitate the acceptance of the unlawful contributions by unwitting recipients and evade detection by regulators and law enforcement.

### B.   The Illegal Contribution Was *Effected* in the District of Columbia

In ascertaining proper venue, "[t]he *locus deliciti* must be determined from the nature of the crime alleged and the location of the act or acts constituting it." *United States v. Morgan*, 393 F.3d 192, 196 (D.C. Cir. 2004) (quoting *United States v. Cabrales*, 524 U.S. 1, 6-7 (1998)); *see also United States v. Chestnut*, 533 F.2d 40, 46 (2d Cir. 1976) (explaining that to determine proper venue, "the district court must ascertain both the nature of the offense and the location of the acts constituting it."). In guiding this inquiry, courts have found it useful to "study the key verbs which define the criminal offense in the statute." *Chestnut*, 533 F.2d 40 at 46-47 (citations omitted); *accord United States v. Crop Growers Corp.*, 954 F. Supp. 335, 352 (D.D.C. 1997). As set forth

---

[6]   In response to Defendant El-Saadi's contention that the Court's inquiry should turn only upon the location in which the unlawful contribution was made, *see* ECF No. 123 at 2, the government hereby incorporates, by reference, the points of authority and arguments set forth in its prior filings at ECF Nos. 92 and 111. As noted herein, however, the Court need not determine where the unlawful contribution at issue in Count 18 was "made" to resolve the instant motion.

below, the nature of the offense, the location of the acts constituting the offense, and the key verbs that define the offense all point to the District of Columbia as the proper venue for Count 18.

### 1. Consideration of the Nature of the Offense Supports a Finding of Proper Venue in the District of Columbia

The nature of the offense with which Defendant El-Saadi is charged—willfully permitting his name to be used to effect contributions of another and willfully causing political committees to unwittingly accept unlawful contributions, ECF No. 1 at ¶ 68—places venue squarely in the District of Columbia.  In considering the nature of the offense, it is instructive to consider the purpose of the statute under which Defendant El-Saadi is charged.  Congress first enacted § 30122 as part of FECA, which was designed in part to promote transparency in campaign finance, by requiring the disclosure of contribution sources.  *See O'Donnell*, 608 F.3d at 553 ("[T]he congressional purpose behind [§ 30122]—to ensure the complete and accurate disclosure of the contributors who finance federal elections—is plain."); *see also Mariani v. United States*, 212 F.3d 761, 775 (3d Cir. 2000) (rejecting constitutional challenge to § 441f [now § 30122] due to the compelling governmental interest in disclosure); *United States v. Boender*, 649 F.3d 650, 661 (7th Cir. 2011) ("Straw man contributions undermine the goal of complete and accurate disclosure of the contributors who finance federal elections . . . .").

One harm that FECA sought to criminalize was the circumvention of contribution limits, as is alleged in the instant case, by funneling contributions through conduits who are willing to lend their identities for this purpose. *See, e.g.*, *United States v. Whittemore*, 944 F. Supp. 2d 1003, 1005 (D. Nev. 2013), *aff'd*, 776 F.3d 1074 (9th Cir. 2015) (prosecution under 2 U.S.C. § 441f [now 52 U.S.C. § 30122] of conduit contribution scheme designed to "bypass the individual campaign contribution limits under federal law").  The statute also makes it a crime for a campaign to willfully accept any unlawful contribution. *See, e.g.,* 52 U.S.C. § 30121(a)(2) (making it

8

unlawful for a campaign to "solicit, accept or receive" contributions from foreign nationals); 52 U.S.C. § 30122 (making it unlawful to "knowingly accept a contribution made by one person in the name of another person"). Moreover, "[p]roscription of conduit contributions (with the concomitant requirement that the true source of contributions be disclosed) would seem to be at the very core of the [Supreme Court's decision in *Buckley v. Valeo*, 424 U.S. 1 (1976)]," which upheld the constitutionality of FECA's reporting and disclosure requirements as advancing three government interests:

> to provide the electorate with information as to where political campaign money comes from and how it is spent by the candidate in order to aid the voters in evaluating those who seek federal office; to deter actual or apparent corruption; and ***to gather the data necessary to detect violations of the contribution limits***.

*Mariani v. United States*, 212 F.3d 761, 775 (3d Cir. 2000) (en banc) (emphasis added) (citing *Buckley*, 424 U.S. at 66-68); *see also Citizens United v. FEC*, 558 U.S. 310, 371 (2010) ("The First Amendment protects political speech; and disclosure permits citizens and shareholders to react to the speech of corporate entities in a proper way. This transparency enables the electorate to make informed decisions and give proper weight to different speakers and messages."); *Doe v. Reed*, 561 U.S. 186, 199 (2010) ("Public disclosure also promotes transparency and accountability in the electoral process to an extent other measures cannot."). In short, § 30122 serves to prevent circumvention of FECA's contribution limits and promotes transparency in campaign financing. In this context, the nature of the offense charged necessarily encompasses the recipient committees' receipt, acceptance, and reporting of the unlawful contribution.

Because Defendant El-Saadi is charged in Count 18 with *effecting* Khawaja's unlawful contribution and willfully causing Political Committee 2 and Political Committee 5 to accept the contribution, the offense is completed not at the time the contribution was made or delivered, as Defendant El-Saadi contends, but at the time it was received, accepted, and reported by Political

9

Committee 5 via Political Committee 2, thereby avoiding detection of violations of FECA's contribution limits and frustrating its disclosure requirements.  Put differently, the "nature of the crime alleged," *Morgan*, 393 F.3d at 196, in a conduit contribution prosecution is focused not just on the unlawful actions of a person seeking to evade contribution limits, but also on the harm that befalls unwitting committees when they are deceived into receiving, accepting, and reporting unlawful contributions.  That harm is complete only upon the *effecting* of the contribution, after properly enacted campaign finance limits and controls have been willfully and successfully circumvented.

Defendant El-Saadi is alleged to have caused that precise harm in the instant case, when Political Committee 5 unwittingly accepted the unlawful contribution in the District of Columbia.  Accordingly, a finding that venue is proper in this District gives full meaning, as intended by the legislature, to the term "*effect*" in § 30122, as applied to conduits who lend their identities to disguise the source of unlawful contributions.  *See Menasche*, 348 U.S. at 538-39.

> **2.  Examination of the Key Operative Verb in the Statute Supports a Finding of Proper Venue in the District of Columbia**

To determine the location of the acts constituting the nature of the offense to establish venue (*i.e.*, where the unlawful contribution was *effected*), courts frequently look to the "key verbs which define the criminal offense in the statute."  *Chestnut*, 533 F.2d at 46-47; *see also United States v. O'Donnell*, 608 F.3d 546, 550 (9th Cir. 2010) (relying on the "ordinary usage" of words in § 30122 to determine the nature of the offense proscribed by the statute); *Crop Growers Corp.*, 954 F. Supp. at 352 ("To determine where a crime was committed, a court must 'examine "the key verbs in the statute defining the criminal offense" to find the scope of the relevant conduct.'") (citations omitted); *cf United States v. Villanueva-Soto*, 515 F.3d 1234, 1237 (D.C. Cir. 2008) (explaining that if the statute "has a plain and unambiguous language," then "our inquiry ends and

we apply the statute's plain language") (citations omitted).  In the absence of a statutory definition for the term "*effect*", the Court may rely on the dictionary definition of the term to discern its purpose.  See *O'Donnell*, 608 F.3d at 550.  The dictionary definition of the term *effect* is "to bring about; to make happen."  *Effect*, BLACK'S LAW DICTIONARY (11th ed. 2019).  It is clear that, under this definition, a conduit contribution is not effected—that is, brought about or made to happen—until the unlawful contribution is received and accepted by the recipient.

Taking into account the dictionary definition, it is clear that to "*effect*" a contribution requires more than merely writing a check or delivering it to the intended recipient.  To *effect* a contribution, the contribution must be accepted either wittingly—or in this case, unwittingly—by the recipient political committee.  As the Court observed:

> The effecting of the contribution is contingent upon the unwitting committee being willing to accept it.  You can't effect the contribution if the committee's going to say no. . . . [I]t's a question of whether the committee that was located in D.C. would have been willing to accept the contribution.  And if they wouldn't have been willing to accept it . . . then you wouldn't be effecting the contribution.

December 7, 2020, Status Conf. Tr. 27:17-20; 28:6-12.

In determining proper venue, this Court must examine when the defendant's actions have progressed to the point where a court can with confidence find that a crime has been committed.  *See Morgan*, 393 F.3d at 195-96; *Chestnut*, 533 F.2d at 47 (quoting *United States v. Bithoney*, 472 F.2d 16, 23 (2d Cir. 1973)).  As this Court noted at the December 7, 2020, status conference, it cannot be said that a contribution that was attempted but not ultimately accepted by the recipient committee was *effected*.  While allowing one's name to be used to write a check in the name of another could certainly establish an attempt to commit a crime, under the plain meaning of the words of the statute, such a contribution would not be *effected* until the funds were received and accepted by the committee.

11

In other contexts, courts have found that venue lies where the products of the defendant's criminal conduct were received, and define "received" as the location where the recipient was physically located. *See, e.g.*, *United States v. Lange*, 834 F.3d 58, 70 (2d Cir. 2016) (finding venue proper in securities fraud case where individuals receiving communications in furtherance of defendant's criminal conduct were located); *United States v. Rowe*, 414 F.3d 271, 279-80 (2d Cir. 2005) (finding venue proper for conviction of advertising to receive, exchange, or distribute pornography in District where undercover agent was physically located when he viewed advertisement).

The government anticipates that the evidence at trial will show that the contribution that Defendant El-Saadi *effected* was received, accepted, and reported in the District of Columbia. Accordingly, venue in this District is appropriate given that the offense of *effecting* Khawaja's unlawful contribution in the name of Defendant El-Saadi, as charged in the Indictment, occurred in the District of Columbia.

II.  **The Regulations Governing Joint Fundraising Efforts Support a Finding of Venue in the District of Columbia**

Defendant El-Saadi points to FECA's regulations to argue that "while Political Committee 5 may have later received a portion of the alleged contribution, that disbursement is too far removed from Mr. El-Saadi and Political Committee 2's receipt of the contribution to establish venue in this District." (ECF No. 123, at 7; *see also* June 15, 2021, Status Conf. Tr. at 8-9.) This argument misapprehends the structure and function of joint fundraising committees. As the evidence at trial will show, Political Committee 2 was a joint fundraising committee that engaged in joint fundraising efforts and collected contributions on behalf of its participating committees. *See* 11 C.F.R. § 102.17(b)(1) (stating that a joint fundraising committee "shall be a reporting political committee and shall collect contributions, pay fundraising costs from gross proceeds and

12

from funds advanced by participants, and disburse net proceeds to each participant.").[7] As a JFC, Political Committee 2 was precluded from participating in any other joint fundraising efforts. *See id*. § 102.17(a)(1)(i). Importantly, when Political Committee 2 collected a contribution, Political Committee 2's disbursement of its funds to participating committees was wholly determined by the written agreement through which it was created. *See id*. § 102.17(c)(1) ("The participants in a joint fundraising activity shall enter into a written agreement . . . [which] shall identify the fundraising representative and shall state a formula for the allocation of fundraising proceeds."); *id*. § 102.7(c)(7)-(8) (describing allocation of joint fundraising committee proceeds). Lastly, Political Committee 2's role as exclusive collector of contributions to the joint fundraising effort was clear: Had Political Committee 5 received a joint fundraising contribution, it was required to forward the contribution to Political Committee 2. *See* 11 C.F.R. § 102.17(b)(2), 102.8.

Citing *Menasche*, 348 U.S. at 538-39, Defendant El-Saadi argues that "[i]f the *receipt* of contributions and *disbursement* of contributions was one in the same, as the government suggests, the regulations would have been written as such." ECF No. 123, at 6. But the regulations in fact underscore that the collection and disbursement of funds by Political Committee 2 are not as separate as Defendant El-Saadi urges. This is true for several reasons: First, Political Committee 2's maximum fundraising limit was the sum of the contribution limits for each of the participating committees. *See* 11 C.F.R. § 102.17(c)(5). Second, FEC regulations treat contributions to a joint fundraising committee as having been made simultaneously to the participating committees. *See id*. § 102.17(c)(3)(iii) ("For contribution reporting and limitation purposes, the date of receipt of a contribution by a participating political committee is the date that the contribution is received by

---

[7] The evidence introduced at trial will establish that Political Committee 2 was a separate political committee, rather than a participating committee, that serves as the JFC.

the fundraising representative."). Third, further evidencing that a contribution to Political Committee 2 necessarily involves Political Committee 5 by virtue of their joint fundraising efforts, the regulations mandate that joint fundraising solicitations notify potential contributors of the names of Political Committee 2's participating committees, one of which here was Political Committee 5. *See id.* § 102.17(c)(2) (requiring a joint fundraising committee to provide, in part, a notice that lists the names of all participating committees in solicitations for contributions). Accordingly, as a matter of law, a contribution collected by Political Committee 2 was not separate or removed from the disbursement of those funds to Political Committee 5. In fact, Political Committee 2 was *required* to forward the net proceeds of the contributions it received to Political Committee 5 according to a prearranged and disclosed formula. *Id.* § 102.17(b)(1), (c)(2)(i).

Lastly, Defendant El-Saadi's reliance on *United States v. Bezmalinovic*, 962 F. Supp. 435 (S.D.N.Y. 1997), is misplaced. Whereas in that case the court found venue improper because only ministerial actions occurred in the district and the defendant did not foresee or intend the acts to take place there, *Bezmalinovic,* 962 F.Supp. at 441, here—given the joint fundraising arrangement of Political Committee 2 and Political Committee 5—it simply defies credulity to say that the receipt of the funds by Political Committee 5 in the District of Columbia was a ministerial act, or that Defendant El-Saadi did not foresee or intend that his illegal conduct would result in an illegal contribution being accepted in the District of Columbia.

In fact, *Bezmalinovic* supports the government's position. To determine whether venue is proper, the *Bezmalinovic* court looked at "the elements and nature of the crime" and "the locus of the *effect* of the criminal conduct." *Id*. at 437 (emphasis added). In this case, Defendant El-Saadi has been charged with a violation of § 30122, which was designed to ensure complete and accurate disclosure of contributors who finance federal elections. Defendant El-Saadi knowingly permitted

14

his name to be used to *effect* an unlawful contribution funded by Defendant Khawaja. A portion of this contribution was received, accepted, and reported by Political Committee 5, based in the District of Columbia, pursuant to a predetermined allocation formula for joint fundraising efforts, made public with each and every solicitation for contributions in which Political Committee 5 took part. The evidence at trial will show that Political Committee 5 would not have received, accepted, or reported the unlawful contribution but for Defendant El-Saadi's deception. Accordingly, the locus of the effect of the criminal conduct is in the District of Columbia.

For the foregoing reasons, venue for Count 18 of the Indictment is proper in the District of Columbia.

Respectfully submitted,

COREY R. AMUNDSON
Chief, Public Integrity Section
Criminal Division
U.S. Department of Justice

By:   */s/ Victor R. Salgado*
**Victor R. Salgado**
D.C. Bar No. 975013
Senior Litigation Counsel
**Michelle K. Parikh**
Trial Attorney
D.C. Bar No. 1044532
Public Integrity Section
Criminal Division
U.S. Department of Justice

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record for the defendant.

Dated:  July 2, 2021                                       */s/ Victor R. Salgado*
                                                                                          Victor R. Salgado
                                                                                          Public Integrity Section
                                                                                          Criminal Division
                                                                                          U.S. Department of Justice