# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

    v.

MOHAMMAD "MOE" DIAB, AND
RANI EL-SAADI,

          Defendants.

No. 1:19-cr-374 (RDM)

## RANI EL-SAADI'S RESPONSE IN SUPPORT OF SEVERANCE AND IN OPPOSITION TO GOVERNMENT'S MOTION TO CONTINUE TRIAL

Justin V. Shur
D.C. Bar #973855
Kenneth E. Notter III
D.C. Bar #1708367
MoloLamken LLP
600 New Hampshire Avenue, N.W.
Washington, D.C.  20037
Telephone:  (202) 556-2000
Facsimile:   (202) 556-2001
jshur@mololamken.com

Megan Cunniff Church
Admitted *pro hac vice*
IL Bar #6281234
MoloLamken LLP
300 N. LaSalle Street
Suite 5350
Chicago, IL  60654
Telephone:  (312) 450-6700
Facsimile:   (312) 450-6701

*Attorneys for Rani El-Saadi*

Mr. El-Saadi has waited two years to clear his name at trial.  Now the government wants to delay trial indefinitely while it produces materials from a District of Massachusetts investigation that has nothing to do with his case.  Mr. El-Saadi, however, intends to hold the government to its constitutional obligation to give him a speedy trial.  To do so, Mr. El-Saadi is prepared to waive any discovery rights he may have in the materials from the District of Massachusetts investigation.  Neither law nor logic prohibits him from doing so.  And because continued joinder would prejudice Mr. El-Saadi's right to a speedy trial, the Court should use its discretion to sever Mr. El-Saadi's case so that he may proceed to trial as scheduled.

## I.    THE GOVERNMENT'S NEGLIGENCE WILL CAUSE AN INDEFINITE DELAY

The government has had years to prepare for this trial.  It convened a grand jury two-and-a-half years ago.  Dkt. 1 at 1.  It charged Mr. El-Saadi more than two years ago.  Dkt. 1.  It secured a plea agreement from its key witness more than a year ago.  Dkt. 78.  And it learned trial would begin on December 6 more than ten months ago.  Dkt. 104.

But the government is still not ready for trial.  It now needs more time to obtain, review, and produce tens of millions of pages of "outstanding materials from the District of Massachusetts."  Dkt. 156 at 1 ("Gov't Mot.").  The D. Mass. investigation has nothing to do with Mr. El-Saadi.  According to the government, it is run by a "separate and distinct prosecution team[ ]" and involves "separate events and crimes."  Dkt. 146 at 3.  In fact, the government says that "production of materials from the District of Massachusetts case is not required in this case."  Dkt. 146 at 3.  Nevertheless, the government—in "an abundance of caution"—*elected* to obtain and produce that unrelated material at some unspecified future date.  Dkt. 146 at 3.

What the government calls "caution" is really negligence.  The government has known about the D. Mass. investigation since at least June 2020, when D. Mass. and DOJ prosecutors jointly interviewed Rudy Dekermenjian.  Just a few months later, Mr. Dekermenjian pleaded

"guilty to conduct related to the District of Massachusetts case" and the prosecution team in this case "communicated with the DMA Team about these proceedings at or around that time." Dkt. 146 at 6 n.5. Mr. Dekermenjian even "offered to produce records to prior government counsel in this case, but prior government counsel declined this offer." Dkt. 145-5 at 2. Yet the government waited more than a year before even asking the D. Mass. team to provide a single document.[1] Dkt. 146 at 3. It then waited another month to tell Mr. El-Saadi about its intention to seek millions of pages of documents. Dkt. 145-5 at 2. That delay is inexcusable. And the government hasn't even tried to explain the delay other than to categorically assert that the government "has been diligent." Gov't Mot. 3. But waiting until just before trial to seek millions of documents is not diligence. It is negligence.

The government's proposed 60-day continuance to rectify that negligence is at best recklessly naïve and at worst intentionally misleading. The government *just* obtained the four terabytes of material from the D. Mass. team after requesting the material at least a month earlier. *See* Gov't Mot. 2-3 (material received Nov. 19); Dkt. 153 at 3 (material requested "shortly after" Aug. 25 indictment). Reviewing and producing that material will surely take the government more than 60 days. Even the government doesn't seem to think it can hit that target. The Court invited the government at the November 19 status conference to commit to either try Mr. El-Saadi by May 1 or dismiss all charges. Church Decl. ¶11. That the government has not taken the Court up on

---

[1] Mr. El-Saadi, by contrast, had no basis or reason to pursue the D. Mass. material. He could not pursue that material because the prosecution team here did not possess that material, and he believed (and still believes) that the D. Mass. material was irrelevant to the charges against him and cumulative of the ample material already available to impeach Mr. Dekermenjian. The Public Integrity Section filter team also confirmed that it had conducted targeted searches in the potentially privileged material for Mr. El-Saadi's name and did not identify any materials for Mr. El-Saadi. Church Decl. ¶13.

that invitation speaks volumes about the government's confidence in its ability to promptly review and produce the D. Mass. materials.

Even if the government *could* review and produce the millions of pages of outstanding materials, Mr. El-Saadi could not possibly review that many pages in anything less than six months. So far, the government has produced around 540,000 pages, which Mr. El-Saadi's counsel reviewed as it was produced. The government cannot think that Mr. El-Saadi's three-lawyer team can review 40 times that many pages in less than 60 days. The very suggestion shows that the government's proposed 60-day continuance is a mirage.

The four terabytes aside, there are still 13,500 documents with two separate filter teams that the prosecution team has not even received.[2] Gov't Mot. 2-3. Without seeing the materials, the government proclaims that "a 60-day continuance will provide sufficient time . . . for the filter teams and Courts to complete review of outstanding privilege issues." Gov't Mot. 3 n.1. Not a chance. The Public Integrity Section filter team told Mr. El-Saadi's counsel that it took *months* to litigate a privilege dispute with Mr. Khawaja's counsel over roughly six pages of materials. Church Decl. ¶7. And despite pressing from Mr. El-Saadi's counsel, the filter team could not give even a rough estimate of how long it would take to resolve the inevitable privilege fights over the remaining 13,500 documents. Church Decl. ¶¶8-10. How the prosecution team can now say that a 60-day continuance is enough when the filter team itself could not give an estimate is unclear. But it is clear that any delay would be *far* longer than 60 days.

---

[2] Mr. El-Saadi first learned about these potentially privileged materials in a footnote in the government's November 11 response to his *Brady* motion. *See* Dkt. 146 at 2 n.1; Church Decl. ¶4. Mr. El-Saadi's counsel has since learned from the Public Integrity Section filter team that the prosecution team knew about this batch of materials since September or October. Church Decl. ¶6. The government has never explained the delay in informing Mr. El-Saadi about these issues.

## II.   MR. EL-SAADI CAN WAIVE ANY DISCOVERY RIGHTS HE MAY HAVE IN THE DISTRICT OF MASSACHUSETTS MATERIALS

Criminal defendants can waive even their most basic rights.  *Peretz v. United States*, 501 U.S. 923, 936 (1991).  They can waive the right to select a jury before an Article III judge, *id.*, and the right to be present at all stages of a criminal trial, *United States v. Gagnon*, 470 U.S. 522, 529 (1985) (per curiam).  They can waive their double jeopardy rights, *Ricketts v. Adamson*, 483 U.S. 1, 9-10 (1987), and the right against self-incrimination, *Rogers v. United States*, 340 U.S. 367, 373-74 (1951).  They can waive the right to conflict-free counsel, *United States v. Lopesierra-Gutierrez*, 708 F.3d 193, 200 (D.C. Cir. 2013), and the right to counsel entirely, *Johnson v. Zerbst*, 304 U.S. 458, 463-65 (1938).  And they can waive the right to be tried by a jury of fewer than twelve, *Patton v. United States*, 281 U.S. 276, 312 (1930), and the right to by tried by a jury at all, *Singer v. United States*, 380 U.S. 24, 34 (1965).

A defendant can likewise waive his discovery rights under *Brady*, *Giglio*, and the Jencks Act.  The D.C. Circuit, for example, has noted in dictum that "a criminal defendant [may] waive[] his right to impeachment evidence under *Giglio*."  *Price v. U.S. Dep't of Justice*, 865 F.3d 676, 681 (D.C. Cir. 2017).  And there is ample authority that "failure to raise [a] *Brady* claim in state court" can preclude a habeas petitioner from asserting the claim in federal court.  *Strickler v. Greene*, 527 U.S. 263, 288 (1999).  The Tenth Circuit has deemed a *Giglio* "argument waived for want of a factual record."  *United States v. Renteria*, 720 F.3d 1245, 1252 (10th Cir. 2013).  So has a panel of the Third Circuit.  *See United States v. Ho-Man Lee*, 664 F. App'x 126, 129 (3d Cir. 2016).  The Tenth Circuit has also explained that a defendant can forfeit a *Brady* claim by not raising her concerns before the district court.  *United States v. Battles*, 745 F.3d 436, 446 (10th Cir. 2014).  That a criminal defendant can, as these cases recognize, effectively lose discovery rights through inaction suggests that a defendant can also knowingly and voluntarily waive those

rights.  *See Yakus v. United States*, 321 U.S. 414, 444 (1944) ("No procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil case by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.").

Treating discovery rights as waivable is in keeping with the "general rule that presumes the availability of waiver" of constitutional and statutory rights.  *New York v. Hill*, 528 U.S. 110, 114 (2000).  That presumption ordinarily gives way only where the specific rights at issue "are so fundamental to the reliability of the factfinding process that they can never be waived without irreparably discrediting the federal courts."  *United States v. Mezzanatto*, 513 U.S. 196, 204 (1995) (quotation and brackets omitted).  Few rights clear that high bar.  The classic example is "if the parties stipulated to trial by 12 orangutans the defendant's conviction would be invalid notwithstanding his consent, because some minimum of civilized procedure is required by community feeling regardless of what the defendant wants or is willing to accept."  *Id.* (quoting *United States v. Josefik*, 753 F.2d 585, 588 (7th Cir. 1985)).  Even the right to an impartial jury, for example, can be waived in many circumstances.  *See United States v. Brazelton*, 557 F.3d 750, 754-55 (7th Cir. 2009).  Waiving discovery rights strikes less directly at the core of "civilized procedure" than waiving the right to an impartial jury or the right to be present at trial.  And waiving discovery rights is hardly akin to agreeing to trial by orangutan.  The Court should therefore follow the general rule and treat discovery rights as waivable.

Despite the government's suggestion (at 4-5), *Price* is not to the contrary.  The question there was whether the government could deny a defendant's FOIA request because he had waived his right to seek any information about his case as part of a plea agreement.  865 F.3d at 678.  In considering that question, the D.C. Circuit rejected the argument that "FOIA rights cannot be

waived," *id.* at 680, and specifically mentioned the propriety of "a criminal defendant waiv[ing] his right to impeachment evidence under *Giglio*," *id.* at 681.  But because the government failed to identify ***any*** "criminal-justice interest served by the [FOIA] waiver," *id.* at 678, the court "decline[d] to do the government's work for it" and held that the waiver offended public policy and was thus unenforceable, *id.* at 683.

Allowing Mr. El-Saadi to waive his discovery rights is consistent with *Price*, public policy, and common sense.  Waiver would serve a foundational "criminal-justice interest"—vindicating Mr. El-Saadi's right to a speedy trial.  That right furthers important societal interests that would go unserved if Mr. El-Saadi were prohibited from waiving his discovery rights.  *See Barker v. Wingo*, 407 U.S. 514, 520-21, 527 (1972) (describing the societal interests).  Those personal and public interests outweigh the miniscule interests the specific discovery rights at issue here would further.  Mr. El-Saadi would not be waiving any rights in material collected during the government's investigation of the case against him.  He would waive his rights ***only*** in the material collected in the D. Mass. investigation, which the government concedes has nothing to do with Mr. El-Saadi.  In fact, the government's position has long been that it has no obligation to produce the D. Mass materials at all.  Dkt. 146 at 3.  So Mr. El-Saadi does not really give up ***anything*** by waiving his discovery rights in that material.  That is particularly true given that Mr. El-Saadi already has ample impeachment material against the alleged key players in the D. Mass. scheme— Messrs. Khawaja, Diab, and Dekermenjian—only one of whom is a government witness.  A seventeenth line of impeachment for that witness will not do anything that the first sixteen can't.  The choice Mr. El-Saadi faces, then, is to either sacrifice his right to a speedy trial or receive material that ***might*** undermine the credibility of one witness whose file already overflows with impeachment material.  That is an easy choice for Mr. El-Saadi.

The Court should not credit the government's argument (at 4-5) that waiver could create an appellate issue. That argument is speculation. It assumes that Mr. El-Saadi will be convicted. It assumes that something in the D. Mass. materials would fall under *Brady*, *Giglio*, or the Jencks Act. It assumes that Mr. El-Saadi would challenge any conviction on that basis. It assumes that, notwithstanding waiver, his challenge would succeed. And it assumes that the D.C. Circuit would depart from the general rule that criminal defendants may waive constitutional rights. It is not speculation, however, to recognize that refusing waiver would prejudice Mr. El-Saadi's right to a speedy trial, and that if convicted, he would have a strong appellate issue on speedy trial grounds. Thus, to the extent that fear of creating potential appellate issues is relevant, it ***favors*** allowing waiver here.

Should the Court agree that Mr. El-Saadi may waive his discovery rights in the D. Mass. materials, Mr. El-Saadi is prepared to engage in any colloquy the Court deems necessary. A waiver is knowing and intelligent "if the defendant fully understands the nature of the right and how it would likely apply ***in general*** in the circumstances." *United States v. Ruiz*, 536 U.S. 622, 629 (2002) (emphasis in original). Mr. El-Saadi has been advised of the scope of the D. Mass. materials as relayed by the government and the Public Integrity Section filter team. Church Decl. ¶ 12. He has also been advised of the nature of his discovery rights in the D. Mass. materials, the known scope of the D. Mass. materials, how his discovery rights might apply in this case, and the consequences of waiving those rights. Church Decl. ¶ 14. Because the D.C. Circuit has advised that for a waiver of the right to trial by jury it is "[b]est practice" for the district court to "conduct an oral colloquy" following the procedure outlined in "the Benchbook for U.S. District Court Judges," Mr. El-Saadi proposes out of caution that the Court follow the same procedure here.

*United States v. Pasha*, 797 F.3d 1122, 1129 (D.C. Cir. 2015).  And the government is free to propose any additional questions to address any concerns it may have.  *See* Gov't Mot. 5-6.

## III.   SEVERANCE IS NECESSARY TO VINDICATE MR. EL-SAADI'S SPEEDY TRIAL RIGHT

Whether to grant severance "is addressed to the sound discretion of the trial court."  *United States v. Mardian*, 546 F.2d 973, 977 (D.C. Cir. 1976) (en banc).  Courts should use that discretion to grant severance if "a joint trial would compromise a specific trial right of one of the defendants."  *United States v. Slatten*, 865 F.3d 767, 810 (D.C. Cir. 2017) (per curiam) (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)).  Because prejudice to a trial right can arise at any time, district courts—even after denying severance—have a "continuing duty at all stages of the trial to grant a severance if prejudice does appear."  *Mardian*, 546 F.2d at 979 (quoting *Schaffer v. United States*, 362 U.S. 511, 516 (1960)).

Prejudice to the right to a speedy trial is "assessed in the light of the interests of defendants which the speedy trial right was designed to protect."[3]  *Barker*, 407 U.S. at 532.  That right is "essential to protect at least three basic demands of criminal justice in the Anglo-American legal system."  *Smith v. Hooey*, 393 U.S. 374, 377-78 (1969).  One of those "basic demands" the speedy trial right serves is "to minimize anxiety and concern accompanying public accusation."  *Id.* at 378.  "Arrest," after all, "is a public act that may seriously interfere with the defendant's liberty,

---

[3] In the speedy-trial context, a delay of more than a year between indictment and trial is deemed "presumptively prejudicial." *Doggett v. United States*, 505 U.S. 647, 652 (1992). Two years have passed since Mr. El-Saadi's indictment, so the pretrial delay is *already* "presumptively prejudicial," and that prejudice will only intensify during the indefinite delay joinder would produce. *Id.* Indeed, it is "fundamental error" to treat "an affirmative demonstration of prejudice [as] necessary to prove a denial of the constitutional right to a speedy trial." *Moore v. Arizona*, 414 U.S. 25, 26 (1973) (per curiam). Courts must also ask who is to blame for the delay—the defendant or the government. *See United States v. Brown*, 520 F.2d 1106, 1111 (D.C. Cir. 1975). For delays exceeding a year, it is the government's burden to justify the delay, and even seemingly neutral reasons for delay—such as court congestion or "overworked agencies"—are counted against the government. *United States v. West*, 504 F.2d 253, 256 (D.C. Cir. 1974).

whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends." *Betterman v. Montana*, 578 U.S. 437, 444 (2016) (quotation omitted). The right to a speedy trial is the antidote to those ills.

Continued joinder would unquestionably prejudice Mr. El-Saadi's right to a speedy trial by inflicting needless anxiety and concern. Mr. El-Saadi has **already** experienced anxiety and concern far beyond what is typical. As explained elsewhere, the government's accusations have destroyed Mr. El-Saadi's reputation and business. *See* Dkt. 153 at 6-9; Dkt. 109. An indefinite delay would force Mr. El-Saadi to watch as the last pieces of his business crumble and the destruction becomes permanent. That is a form of anxiety most criminal defendants do not endure. Nor do most criminal defendants experience the anxiety of seeing the charges against them publicized by major newspapers. When the government indicted Mr. El-Saadi, the *New York Times*, for example, ran two separate stories on the indictment; the *L.A. Times* ran another; so did the *Washington Post*.[4] These stories mention Mr. El-Saadi by name **and** give the (false) impression that he was part of the alleged scheme to help a foreign power influence the 2016 presidential election. Those insinuations inspire unique anxiety in a naturalized citizen with the last name El-

---

[4] *See* Daniel Victor *Prominent Political Donors Charged in Campaign Finance Schemes*, N.Y. Times (Dec. 4, 2019), https://www.nytimes.com/2019/12/04/us/politics/george-nader-ahmad-khawaja.html; David D. Kirkpatrick & Kenneth P. Vogel, *Indictment Details How Emirates Sought Influence in 2016 Campaign*, N.Y. Times (Dec. 5, 2019), https://www.nytimes.com/2019/12/05/us/politics/indictment-uae-influence.html; Associated Press, *Mueller Witness Conspired to Conceal Donations, Prosecutors Say*, L.A. Times (Dec. 4, 2019), https://www.latimes.com/world-nation/story/2019-12-04/mueller-witness-charged-conspiring-conceal-donations; Spencer S. Hsu & Matt Zapotosky, *Key Mueller Witness, Major Clinton and Trump Donor Charged With Funneling $3.5 Million in Illegal Contributions*, Wash. Post (Dec. 3, 2019), https://www.washingtonpost.com/local/legal-issues/key-mueller-witness-major-clinton-and-trump-donor-charged-with-funneling-35-million-in-illegal-contributions-in-2016-us-elections/2019/12/03/d1cd9166-153a-11ea-9110-3b34ce1d92b1_story.html.

Saadi.  The only cure for that anxiety is a speedy trial.  Denying Mr. El-Saadi that speedy trial would needlessly extend his time under the "cloud of anxiety, suspicion, and often hostility" that he has been laboring under for the past two years.  *Barker*, 407 U.S. at 533.

The government cannot rebut this showing of prejudice.  Its suggestion (at 6-8) that Mr. El-Saadi's speedy trial right is not a "legal basis to sever" is flat-out wrong.  Courts routinely grant severance where continued joinder would prejudice a defendant's right to a speedy trial.[5]  The two cases the government cites (at 8) say nothing different.  The first merely recites the uncontested proposition that "cases involving multiple defendants are governed by a single speedy trial clock." *United States v. Worthy*, No. 19-cr-186, 2021 WL 5316438, at *6 (W.D.N.Y. Nov. 16, 2021).  The second says nothing about severance but asks "whether exclusion of at least twenty-five days" under the speedy trial clock was reasonable.  *United States v. Pena*, 793 F.2d 486, 490 (2d Cir. 1986).  Neither case is remotely relevant to the question here—whether an indefinite delay would prejudice Mr. El-Saadi's right to a speedy trial.  And court after court has ruled that a defendant's

---

[5] *See, e.g.*, *United States v. Peltier*, No. 18-cr-36, 2020 WL 6065555, at *7 (W.D. Mo. Oct. 14, 2020) (granting severance because joinder would prejudice speedy trial right); *United States v. George*, No. 17-cr-201, 2019 WL 4194526, at *14 (E.D. La. Sept. 4, 2019) (granting severance after prior denial because "circumstances have changed since then" and joinder would prejudice defendant's "right to a speedy trial"); *United States v. Santiago-Mesinas*, No. 18-cr-209, 2018 WL 4899076, at *7 (D. Colo. Oct. 9, 2018) (granting severance because joinder would prejudice speedy trial right); *United States v. Baca*, No. 16-cr-1613, 2016 WL 6404772, at *31 (D.N.M. Oct. 20, 2016) (granting severance because "a joint trial would compromise [defendant's] right to a speedy trial"); *United States v. Poulsen*, No. 02-cr-129, 2008 WL 77745, at *3 (S.D. Ohio Jan. 4, 2008) (granting severance where "delay would be a matter of months" and thus prejudice defendant's speedy trial right); *United States v. Nuse*, No. 07-cr-315, 2007 WL 3293363, at *2 (E.D. Cal. Nov. 6, 2007) (similar); *United States v. Byrd*, 466 F. Supp. 2d 550, 551 (S.D.N.Y. 2006) (granting severance where joinder would "deprive [defendant] of a speedy trial"); *United States v. Serafini*, 7 F. Supp. 2d 529, 555 (M.D. Pa. 1998) ("Speedy trial concerns also support severance."), *aff'd*, 167 F.3d 812 (3d Cir. 1999); *see also United States v. Ford*, 155 F. Supp. 3d 60, 68-69 (D.D.C. 2016) (recognizing that the right to a speedy trial may support severance); *United States v. Kemp*, No. 04-cr-370, 2004 WL 2757867, at *4 (E.D. Pa. Dec. 2, 2004) (noting severance appropriate "where a joint trial would compromise a specific trial right, such as the right to a speedy trial").

speedy trial right is prejudiced where "delay would be a matter of months, and not weeks or days." *United States v. Poulsen*, No. 02-cr-129, 2008 WL 77745, at *3 (S.D. Ohio Jan. 4, 2008); *see* p. 10 n.5, *supra* (collecting similar cases); *see also United States v. Serafini*, 7 F. Supp. 2d 529, 555 (M.D. Pa. 1998) ("[T]he public's interest in a speedy trial" on campaign finance charges "weigh[ed] heavily in favor of severance"), *aff'd*, 167 F.3d 812 (3d Cir. 1999).

Nor can the government minimize the prejudice Mr. El-Saadi will suffer from continued joinder. *See* Gov't Mot. at 6-8, 13-14. The right to a speedy trial "is one of the most basic rights preserved by our Constitution." *Klopfer v. North Carolina*, 386 U.S. 213, 226 (1967). And "the major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense." *United States v. Marion*, 404 U.S. 307, 320 (1971). That Mr. El-Saadi does not currently allege that his defense would be prejudiced by delay does not mean that his speedy trial right is not prejudiced by delay. Nor is it an answer to the prejudice Mr. El-Saadi has described to point out that Mr. El-Saadi "is not detained." Gov't Mot. 14. "[E]ven if an accused is not incarcerated prior to trial, his is *still* disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility." *Barker*, 407 U.S. at 533 (emphasis added). Mr. El-Saadi has explained how an indefinite delay would extend the "cloud of anxiety" over him. That is enough for severance. It is irrelevant whether that prejudice amounts to a *current violation* of Mr. El-Saadi's speedy trial right, as the government seems to think it must. *See* Gov't Mot. 13-14. "[T]he only possible remedy" for a speedy trial *violation* is "dismissal of the indictment." *Barker*, 407 U.S. at 522. But severance, not dismissal, is the proper remedy where there is a risk that continued joinder would compromise a defendant's speedy trial right *going forward*. *See, e.g.*, *United States v. Baca*, No. 16-cr-1613, 2016 WL 6404772, at *31 (D.N.M. Oct. 20, 2016) (severing where one defendant's trial would "have to wait for discovery

to be complete as to all Defendants"). Mr. El-Saadi has done all he must for severance by showing that an indefinite delay would needlessly subject him to anxiety and concern.

Rather than address that showing, the government insinuates (at 7-8) that Mr. El-Saadi will not be prejudiced because he somehow sat on his speedy trial right. Nonsense. Mr. El-Saadi did not assert his right to a speedy trial sooner because the **government** misled him into thinking he would be tried on December 6, as the Court had ordered almost a year ago. Church Decl. ¶¶ 15-16. Had Mr. El-Saadi known that the government was planning to produce millions of pages of materials (including thousands of potentially privileged emails), Mr. El-Saadi would have moved for severance and challenged any resulting delay as violating his constitutional and statutory speedy trial rights. As for Mr. El-Saadi's consent "to the prior exclusions of time," Gov't Mot. 8, he consented because, at those times, there was no chance of a jury trial given the ongoing COVID-19 restrictions. Once trial became feasible, Mr. El-Saadi did not consent to any extensions or continuances. And the moment he learned that the government's negligence threatened his right to a speedy trial, he asserted that right. Church Decl. ¶ 16.

Unable to contest prejudice, the government argues that the Court should adhere to its earlier opinion denying severance. *See* Gov't Mot. 6, 8. That the Court denied severance earlier is irrelevant, though, given the ongoing duty "to grant a severance if prejudice does appear." *Mardian*, 546 F.2d at 979 (quoting *Schaffer*, 362 U.S. at 516). Prejudice has appeared, **and** the efficiency rationale supporting the earlier denial of severance has disappeared. Neither Mr. El-Saadi nor the government can say when a joint trial with Mr. Diab is possible. But it won't be for many months. Mr. Diab's counsel has represented that, no matter how long it takes, Mr. Diab is willing to await trial with Mr. Khawaja. Church Decl. ¶ 17. Mr. El-Saadi certainly will not agree to wait for Mr. Khawaja. So whether the Court severs Mr. El-Saadi's case or not, there is a high

probability that there will be two trials.  To be sure, there is an element of speculation in that assessment, but it is no more speculative that the government's worry—in the face of Mr. Diab's commitment to wait for Mr. Khwaja—that it is "unknown whether Khawaja will be returned to the United States in time to be tried alongside defendant Diab."  Gov't Mot. 8.  The reality is that the government's negligence has thrown the case schedule and the Court's trial calendar into disarray; some amount of guesswork is necessary.  Right now, the only certainty is that an indefinite delay from continued joinder would prejudice Mr. El-Saadi's right to a speedy trial. That is grounds for severance.

<u>**CONCLUSION**</u>

Mr. El-Saadi respectfully requests that the Court deny the government's motion for a continuance, grant the defendants' motion for severance, and order the government to proceed to trial against Mr. El-Saadi on December 6, 2021.

Dated:   November 29, 2021                   Respectfully submitted,
         Washington, D.C.


                                             /s/ Justin V. Shur
                                             Justin V. Shur
                                             D.C. Bar # 490545
                                             Kenneth E. Notter III
                                             D.C. Bar # 1708367
                                             MOLOLAMKEN LLP
                                             600 New Hampshire Avenue, N.W.
                                             Washington, D.C.  20037
                                             Telephone: (202) 556-2000
                                             Facsimile:  (202) 556-2001
                                             jshur@mololamken.com

                                             Megan Cunniff Church
                                             Admitted *pro hac vice*
                                             IL Bar #6281234
                                             MOLOLAMKEN LLP
                                             300 N. LaSalle Street
                                             Suite 5350
                                             Chicago, IL  60654
                                             Telephone: (312) 450-6700
                                             Facsimile:  (312) 450-6701

                                             *Attorneys for Rani El-Saadi*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 29th day of November 2021, I electronically caused to be filed Rani El-Saadi's Response In Support of Severance and Opposition To Government's Motion To Continue Trial and attached documents using the CM/ECF system, which will send a notification of such filing to all counsel of record.

/s/ Justin V. Shur
Justin V. Shur
DC Bar #973855
MOLOLAMKEN LLP
600 New Hampshire Avenue, N.W.
Washington, D.C.  20037
Telephone: (202) 556-2000
Facsimile:  (202) 556-2001

*Attorney for Rani El-Saadi*